**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **NIKI M. WOLFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:25-cv-00214-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Frank Bisignano,*[1] | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Niki M. Wolfe appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").

(ECF 1). Because at least one of Wolfe's arguments is persuasive, the Commissioner's decision

will be reversed and the case remanded to the Commissioner for further proceedings in

accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Wolfe applied for DIB in May 2022, alleging disability as of August 10, 2021. (ECF 10

Administrative Record ("AR") 25, 186-89).[2] Wolfe's claim was denied initially and upon

reconsideration. (AR 25, 86, 103). On January 30, 2024, administrative law judge ("ALJ")

Gladys Whitfield conducted an administrative hearing, at which Wolfe, who was represented by

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

counsel, and a vocational expert ("VE") testified. (AR 44-81). On February 28, 2024, the ALJ rendered an unfavorable decision to Wolfe, concluding that she was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 25-39). The Appeals Council denied Wolfe's request for review (AR 9-12), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On April 30, 2025, Wolfe filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Wolfe argues that the ALJ erred by: (1) failing to account in the residual functional capacity (RFC) assessment for her social limitations, migraine headaches, and her need to lie down during the workday; and (2) discounting Wolfe's symptom testimony pertaining to the severity of her limitations. (ECF 14 at 5-6).

On the date of the Commissioner's final decision, Wolfe was thirty-three years old (AR 186), was a high school graduate and had attended some college (AR 54-55, 257), and had past relevant work as a cashier checker, stock clerk, and cleaner II (AR 38; *see also* AR 257). In her application, Wolfe alleged that she is disabled due to the following conditions: breathing issues (on inhaler), obstructive sleep apnea, five bulging lumbar discs, 2019 hip/sciatic injury, recurrent migraines, Hashimoto syndrome (diagnosed in 2018), fibromyalgia, history of recurrent allergies/bronchitis/strep, pernicious anemia, and allegations that she is on the autism spectrum (undiagnosed). (AR 256).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

2

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 404.1520. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

## B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Wolfe was insured for DIB through September 30, 2024. (AR 27). At step one of the five-step sequential analysis, the ALJ found that Wolfe had not engaged in substantial gainful activity since her alleged onset date of August 10, 2021. (*Id.*). At step two, the ALJ found that Wolfe had the following severe impairments: attention deficit hyperactivity disorder, depressive disorder, post-traumatic stress disorder, obesity, migraine, unspecified arthropathies, and fibromyalgia. (*Id.*). At

step three, the ALJ concluded that Wolfe did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29).

The ALJ assigned Wolfe the following RFC:

> the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes or scaffolds; never crawl; occasionally climb ramps or stairs, balance, stoop, kneel and crouch; no pushing or pulling with the lower extremities; avoid more than occasional exposure to wetness; noise level must not exceed level III moderate; no more than occasional exposure to environmental irritants such as fumes, odors, dust and gases; no more than occasional exposure to poorly ventilated areas; avoid all use of hazardous moving machinery; avoid all exposure to unprotected heights; no strobing or flashing lights in the ordinary course of business; no jobs w[h]ere the claimant is required to drive or operate a motorized vehicle to perform the functions of the job; simple, routine repetitive tasks; no teamwork; no work requiring a specific production rate such as assembly line work or work that requires hourly quotas; no more than occasional interaction with coworkers, supervisors and the general public; work must not require direct interactions with general public to perform the essential functions of the job; and no more than occasional routine workplace changes.

(AR 31). The ALJ determined at step four that given the assigned RFC, Wolfe could not perform any of her past relevant work. (AR 38). At step five, the ALJ found a hypothetical individual of Wolfe's age, education, experience, and assigned RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including garment sorter, collator operator, mail clerk, and inspector and hand packager. (ECF 39). Accordingly, Wolfe's application for DIB was denied. (*Id.*).

## C. The RFC

Wolfe argues, among other things, that the ALJ erred by when assigning the RFC by failing to account for the frequency and intensity of her migraine headaches. (ECF 14 at 5). The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five

days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). The RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see* 20 C.F.R. § 404.1545(e).

Wolfe submitted a headache questionnaire in July 2022 in connection with her disability application, representing that she gets "migraines 3 times a week that last 2 days each." (AR 213; *see* AR 32). At the hearing in February 2024, Wolfe testified that she had been experiencing "one consistent migraine since the end of December." (AR 59). Her symptoms include nausea, dizziness, auras, and sensitivity to light and sounds. (AR 59-60). She testified that four times a day she has to stay in a dark room for about three hours. (AR 59). Prior to this "one consistent migraine[,]" she had about three migraines a month, each which took two to three hours to recover from. (AR 59). She takes medication (both oral and injections) for her migraines, which help reduce the frequency and intensity of the migraines but does not prevent them. (*Id.*).

The ALJ duly considered Wolfe's headache questionnaire and subjective symptom testimony pertaining to her migraines, together with the medical evidence, and found her migraines to be a severe impairment at step two. (AR 27, 32-33). As the ALJ noted, in October 2021, Wolfe told her primary care provider that she was experiencing almost daily migraines with light sensitivity, nausea, and vomiting more than twice a week. (AR 33, 476-77). She was

6

started on a monthly injection of Emgality, 120 mg. (AR 33, 476-77, 584-85).[3] By March 2022, Wolfe's neurologist wrote that monthly injections of Emgality "ha[ve] been very helpful reducing [Wolfe's] headache frequency to 1-2 per month." (AR 583; *see* AR 33). In May 2022, Wolfe told her primary care provider that her allergy medication also helped her migraines. (AR 33, 668). In June 2022 visit to her primary care provider, Wolfe reported "major improvements" since taking Ubrelvy, and her migraines were described as "mild" and occurring "intermittently." (AR 33, 528).[4] Wolfe reported at that visit having "10 migraines in the last 2 months, compared to daily and constant headache pain in the past." (AR 528). Yet, in November 2022, Wolfe told a physician during a "disability examination" that she experienced migraines five times a week, fifteen to twenty a month, though she was on monthly Emgality and using Ubrelvy as an abortive agent. (AR 586). In February 2023, Wolfe's neurologist wrote that Wolfe had "started Emgality 120 mg a day and headache frequency has gone done from 2 or 3 per week to perhaps 2 per month." (AR 716; *see* AR 33). He further documented that Wolfe's migraines respond to Ubrelvy 100 mg, though she occasionally has to re-dose, with no side effects. (AR 716).

After considering Wolfe's subjective symptom report and the medical evidence of record, the ALJ concluded that the medical evidence "suggests [Wolfe's] migraines are treatable with proper medication." (AR 33). The ALJ found Wolfe's statements "about the intensity, persistence, and limiting effects of her symptoms . . . inconsistent because they are not wholly supported by objective evidence." (AR 35). The ALJ specifically concluded that "objective evidence shows the claimant reported medication was effective in decreasing the frequency of

---

[3] Emgality is a medication used for migraine prevention. *See, e.g., M.J. v. Bisignano*, No. 4:25-CV-04080-VLD, 2026 WL 381369, at *2 n.6 (D.S.D. Feb. 11, 2026) (citation omitted); *Olivia D. v. Comm'r of Soc. Sec.*, No. 3:23-CV-5035-DWC, 2023 WL 8868563, at *3 (W.D. Wash. Dec. 22, 2023).

[4] Ubrelvy is a medication used for acute treatment of migraines. *See, e.g.*, *Oliver v. Comm'r of Soc. Sec.*, No. 4:25-cv-00841-BYP, 2026 WL 216823, at *3 n.2 (N.D. Ohio Jan. 28, 2026); *Valarie Jean T. v. Comm'r of Soc. Sec.*, No. 3:24-cv-00191-DKG, 2025 WL 894654, at *5 (D. Id. Mar. 24, 2025).

migraines (*e.g.* 13F/1), which is inconsistent with her testimony." (AR 35). In doing so, the ALJ cited the February 2023 note from Wolfe's treating neurologist documenting that Wolfe's migraines were "down from 2 or 3 per week to perhaps 2 per month." (AR 716; *see* AR 33). To accommodate her migraines, the ALJ incorporated certain environmental limitations into the RFC, given that Wolfe "testified she is sensitive to light and sound." (AR 36; *see* AR 31).

Wolfe now argues that the ALJ erred by failing to make a "finding as to the frequency or the length of Ms. Wolfe's migraines" and "include a limitation [in the RFC] that permitted Ms. Wolfe to isolate in a dark room when she suffered a migraine . . . ." (ECF 14 at 10). As to frequency, "it is generally important for an ALJ to include an absenteeism rate when determining the RFC of a claimant who suffers from migraines." *Michelle L.M. v. Kijakazi*, No. 2:22-cv-00151-MKK-JMS, 2023 WL 3835583, at *9 (S.D. Ind. June 6, 2023) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). Although the ALJ could have been more explicit, it is rather apparent that the ALJ relied on the frequency set forth in Wolfe's treating neurologist's February 2023 note ⸽ two migraines per month while taking migraine medications ⸽ given the ALJ's reliance on this note when discounting Wolfe's subjective symptom testimony. (*See* AR 35 (citing AR 716)).

Problematic, however, is that the ALJ failed to square this twice-monthly migraine frequency with the VE's testimony about an employer's tolerance of absenteeism and unplanned breaks. In that regard, the VE testified:

> Q: If an individual needs to take two to three additional breaks of 10 to 15 minutes at a time . . . , how does it affect their ability to maintain work?

> A: That would be work preclusive.

> Q: If an individual needs to lay down even just 1 time a day, for 30 minutes . . . , when that can't be scheduled into a standard work break, how would that affect their ability to maintain work?

A:  That would also be work preclusive.

Q:  And how many absences, in your professional opinion, are tolerated within the year?

A:  Usually seven to eight.

Q:  Okay. So, one to two per month, but not every month, seven to eight total per year?

A:  Yes, that is correct.

(AR 79-80).

While the ALJ amply supported her discounting of the migraine frequency and intensity claimed by Wolfe in her symptom testimony and headache questionnaire (AR 59-60, 213-14), the ALJ failed to confront that even if Wolfe had just twenty-four migraines a year, as her neurologist estimated in February 2023 (AR 716), she still may not be able to maintain competitive employment based on the VE's testimony that an employer will tolerate only seven to eight absences a year (AR 80). *See Jeffrey L.G. v. Kijakazi*, No. 2:20-cv-0583-DLP-JRS, 2022 WL 3681817, at *6 (S.D. Ind. Aug. 25, 2022) (stating that the ALJ's questioning of the VE as to off-task time reflects the ALJ's consideration of the issue, but error occurred when the ALJ included no analysis of off-task time in the decision); *see also Michelle L.M.*, 2023 WL 3835583, at *9 ("If a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month could be disabling." (citation omitted)).

The ALJ should have addressed whether Wolfe could continue to work during a migraine headache when taking Ubrelvy, her abortive migraine medication. *See Gould v. Kijakazi*, No. 21-CV-308, 2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022) ("When an ALJ accepts that a claimant suffers from migraines but . . . is not disabled, . . . [e]ither the ALJ found that the claimant did not suffer migraines at disabling frequency, or the migraines were not of a disabling

severity (*i.e.*, the ALJ found that the claimant could work while suffering a migraine)."); *Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *2 (E.D. Wis. Jan. 6, 2020) ("[T]o assess whether a claimant's migraines preclude substantial gainful activity, it is necessary to assess both how often the claimant suffers migraines and how severe those migraines are."). On the one hand, Wolfe's neurologist indicated that Wolfe's migraines respond to one or two doses of Ubrelvy and "there are no side-effects." (AR 716). On the other hand, the record reflects that when Wolfe experiences a migraine, she recovers in a quiet, dark room for several hours (AR 33; *see* AR 59-60 ("I usually get the nausea and the dizziness and the auras. I don't usually vomit, but that's because I usually go lay down and try to take a nap and sleep it off.")). The VE testified that needing to lie down just one time a day outside of a standard work break, or needing to take unplanned, additional work breaks during a workday, would be "work preclusive." (AR 79).

While the record clearly reflects that Wolfe's migraines significantly improved when taking Emgality and Ubrelvy, "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). The ALJ's decision fails to appreciate this distinction. Therefore, the Commissioner's final decision will be reversed and remanded for further consideration of the RFC with respect to the frequency and intensity of Wolfe's migraines, in the context of the VE's testimony about the attendance and on-task requirements of competitive employment.[5]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying disability is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in

---

[5] Because a remand is warranted based on Wolfe's argument pertaining to her migraines, the Court need not reach her remaining arguments.

accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor

of Wolfe and against the Commissioner.

SO ORDERED.

Entered this 6th day of March 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge